**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | |
|---|---|
| CHRISTINA MITCHELL, in her Official Capacity as the District Attorney for the 38th Judicial District of Texas,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>    *Defendant*. | Case No. 2:25-cv-00033-AM |

**MOTION FOR SUMMARY JUDGMENT**

Defendant United States Customs and Border Protection (CBP) files this Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff, a Texas District Attorney's Office, seeks to have this Court review, under the Administrative Procedure Act (APA), CBP's denial of Plaintiff's request for testimony from three Border Patrol Agents (BPA or the BPAs). Federal agencies' responses to such requests are "[a]t bottom . . . a policy decision about the best use of the agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th 1073, 1076 (7th Cir. 2023) (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)). And under the APA, that decision is reviewed under a "narrow" standard in which the Court "must be mindful 'not to substitute [its] judgment for that of the agency." *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013). Rather, the Court considers whether the agency considered the appropriate factors under the governing law and articulated a rational relationship between the facts found and the choice made. *City of*

*Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 260 (5th Cir. 2012) (agency action not arbitrary and capricious "so long as the agency gave at least minimal consideration to the relevant facts as contained in the record" (internal citation and quotation marks omitted)).

Here, Plaintiff seeks testimony from three Border Patrol Agents about CBP's active shooter and incident command policy and training; equipment; and on-scene communications. The Administrative Record shows that the agency considered each component of Plaintiff's request and explained why multiple factors of the applicable *Touhy* regulations showed that disclosure was not warranted. Plaintiff has not adequately shown how federal agents' testimony on those subjects would be relevant or necessary, since guilt or innocence under state law will turn on evidence about the defendant's own acts and omissions. Nonetheless, CBP provided to Plaintiff and publicly released other forms of information, including the CBP Office of Professional Responsibility Investigative Operations Directorate Case Closing Report for the Uvalde Texas School Shooting w/ Fatalities (CBP OPR Report). In so doing, CBP considered the law, made a reasoned decision, and explained itself. The Court should enter a summary judgment affirming CBP's denials of Plaintiff's *Touhy* request.

If, alternatively, the Court finds that CBP's denial of Plaintiff's request is arbitrary and capricious, the Court should remand Plaintiff's request for further consideration by CBP.

## BACKGROUND

This APA suit is a challenge to CBP's response, dated December 16, 2024, to an October 24, 2024, *Touhy* request seeking pretrial interviews and trial testimony from three BPAs in the state court criminal trial of former Uvalde Consolidated Independent School District Police Department Chief Arredondo. Plaintiff acknowledges that Border Patrol witnesses "cannot be compelled by a state court to appear for state court proceedings, including grand jury

proceedings, depositions, or trial proceedings, to testify about matters that relate to their official duties." ECF No. 1 at ¶ 8. Rather, federal agencies including Defendant have promulgated regulations—commonly known as *Touhy* regulations[1]—that govern their responses to requests for agency testimony and information. Those regulations both establish procedural requirements and enumerate the factors that agencies must consider in determining whether to grant or deny such a request. Defendant's *Touhy* regulations are codified at 19 C.F.R. §§ 103.21–103.27.

Most relevant here, the CBP *Touhy* regulations require the agency, in considering whether to authorize testimony, to consider, among other factors:

> Whether the requesting party has demonstrated that the information requested is . . . [g]enuinely necessary to the proceeding, i.e., a showing of substantial need has been made; [u]navailable from other sources; and [r]easonable in its scope, i.e., the documents, information or testimony sought are described with particularity."

19 C.F.R. § 103.23(a)(3)(ii)–(iv). The regulations also provide that "disclosure will not be made" where such disclosure "would unduly interfere with the orderly conduct of CBP business" or where "CBP has no interest . . . regarding the matter in which disclosure is sought[.]" 19 C.F.R. § 103.23(b)(8)–(9).

Plaintiff seeks review under the APA of CBP's December 16, 2024, denial of her October 24, 2024, *Touhy* request seeking pretrial interviews and trial testimony from the three BPAs, identified in the Complaint as Agents A, B, and C.[2] ECF No. 1 at ¶ 28; *See* AR00006. In the

---

[1] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 (5th Cir. 2017) (general background regarding *Touhy* regulations); *State of La. v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) (same).

[2] CBP's December 14, 2024, denial related to a *Touhy* request for trial testimony presented to CBP by Plaintiff on October 24, 2024. That request was preceded by two other *Touhy* requests: A February 21, 2023, request from Plaintiff to CBP seeking grand jury testimony from eighteen U.S. Border Patrol employees, which CBP denied on March 9, 2023; and an April 2, 2024, request presented by Plaintiff to CBP seeking grand jury testimony from

accompanying affidavit, provided by Assistant DA William Turner, Plaintiff outlines four topics on which she seeks the BPAs' testimony and her office's reasoning on the relevance and necessity of that testimony.

First, Plaintiff seeks testimony about federal active shooter training—specifically, whether federal agents are trained not to override the orders of an incident commander. Affidavit at 4. Plaintiff states that information about CBP's training is relevant to the degree of Arredondo's potential culpability—that he would be less culpable for a wrongful stand-down order if the order did not apply to some officers. *See* AR00010.

Second, Plaintiff seeks Border Patrol testimony about CBP equipment at the scene. Plaintiff contends that testimony that inventories CBP's equipment will assist a fact finder in determining "how much of the incident commander's lack of providing equipment contributed to the delay" in confronting the shooter. *See* AR00010.

Third, Plaintiff cites a need for testimony from the BPAs as to whether Arredondo's communications were received and comprehended by CBP personnel on the scene, information that Plaintiff contends "would assist a fact finder in deciding whether Arredondo's

---

Border Patrol Agents A, B, and C, which CBP denied on May 21, 2024. The *Touhy* requests seeking grand jury testimony were rendered moot by the grand jury's June 2024 indictments of Pete Arredondo and Adrian Gonzales. *See* AR00011. Those requests and responses are relevant to this case only insofar as the December 2024 *Touhy* denial incorporated reasons previously given for denial of the prior requests. CBP's March 9, 2023, and May 21, 2024, letters to Plaintiff from CBP are therefore included in the Administrative Record for this limited purpose.

In addition to these *Touhy* requests, Plaintiff also served state court subpoenas on the three Border Patrol Agents and—jointly with state court defense counsel for Arredondo and Adrian Gonzales—issued a state court subpoena *deuces tecum* to CBP counsel. As Plaintiff acknowledges in this action, such state court subpoenas cannot compel testimony or evidence from the federal entities to which they are directed. ECF No. 1 at ¶ 8; *see also State of La. v. Sparks*, 978 F.2d 226, 235 (5th Cir. 1992). To date, no party to the state court criminal proceedings have sought to enforce the state court subpoenas, and Plaintiff does not seek review as to those subpoenas in this case.

"communications impacted the responding agents' decision making." *See* AR00014.

Fourth, Plaintiff seeks any information the BPAs might have which would negate or mitigate Arredondo's guilt, impeach the testimony of any witness for the State of Texas, or tend to reduce Arredondo's punishment. *See* AR00014.

The Administrative Record shows that CBP's denial of the *Touhy* request appropriately evaluated each aspect of the request according to the factors enumerated in CBP's *Touhy* regulations, 19 C.F.R. § 103.23. CBP's Chief Counsel noted that it was not clear how CBP's training of its agents would bear on the question of whether Arredondo's acts or omissions amounted to a violation of Texas Penal Code 22.041(c). For that reason, CBP's Chief Counsel found that Plaintiff had not "demonstrated that the information requested is . . . [g]enuinely necessary to the proceeding, i.e., a showing of substantial need has been made[.]" *See* 19 C.F.R. § 103.23(a)(3)(ii); *See* AR00017. CBP Chief Counsel also incorporated reasons from a prior response, that Plaintiff "fail[ed] to provide a nexus between the CBP employees' training, equipment or actions and any potential criminal acts or omissions of other law enforcement officers" and failed to show that this information "to corroborate information about the acts or omissions of state and local officers" was unavailable from other sources—specifically, from the numerous state and local law enforcement officers on the scene. *See* AR00022–23.

Concerning Plaintiff's request for testimony about CBP's on-scene equipment, the CBP Chief Counsel noted that the CBP OPR Report had already disclosed that the responding CBP employees were not equipped with breaching tools, maps of the school, or keys to any classroom. *See* AR00017. CBP's Response further noted that the relevance of a CBP equipment inventory to Arredondo's prosecution remained unclear, and that state and local officers on the scene could provide testimony about equipment provided to them by Arredondo or from other

sources as well as communications between Arredondo and officers in the south end of the hallway and the north end of the hallway, where most of the BPAs were located. *See* AR00017; 19 C.F.R. § 103.23(a)(3)(ii) ("showing of substantial need" requirement); (a)(3)(iii) (requirement to show unavailability from other sources).

Finally, CBP denied Plaintiff's request for the BPAs' testimony on all exculpatory, impeaching, or mitigating evidence, finding that request was not defined with sufficient precision such that it would impose unreasonable burdens, require speculation by the agency, and significantly interfere with the orderly conduct of CBP's business. *See* 19 C.F.R. § 103.23(a)(3)(iv) (agency must consider "whether the requesting party has demonstrated that the information requested is . . . [r]easonable in its scope, i.e., the documents, information, or testimony sought are described with particularity."). Additionally, the CBP Response noted that, as a non-party to the state court criminal proceeding, CBP is not subject to the state prosecutor's obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972). *See* AR00018.

## LEGAL STANDARDS

### A. *Touhy* Regulations

Federal agencies are authorized by Congress to promulgate regulations—commonly known as *Touhy* regulations—that govern disclosures of information and authorizations of testimony by federal employees and agents. *See generally CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 & n.8 (5th Cir. 2017) (citing 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951)).

CBP's *Touhy* regulations, codified at 19 C.F.R. §§ 103.21–103.27, prohibit disclosure of CBP information or testimony by CBP employees in their official capacities absent prior authorization from CBP's Chief Counsel. 19 C.F.R. §103.22(a). Parties who request such testimony bear an "initial burden" to produce an affidavit or statement that "sets forth a summary of the . . . testimony sought and its relevance to the proceeding"—a summary that "limit[s] . . . the scope of the demand[.]" 19 C.F.R. § 103.22(c). And testimony may be authorized only where "in the judgment of the Chief Counsel, [such testimony is] appropriate under the factors specified in § 103.23(a)" and "[n]one of the factors specified in § 103.23(b) of this subpart exist with respect to the demanded . . . testimony." 19 C.F.R. § 103.22(f).

Under Section 103.23(a), the CBP *Touhy* regulations enumerate the factors that must be considered by the Chief Counsel in weighing whether to authorize CBP testimony. Those include, among others,

> Whether the requesting party has demonstrated that the information requested is . . . . [g]enuinely necessary to the proceeding, i.e., a showing of substantial need has been made; [u]navailable from other sources; and [r]easonable in its scope, i.e., the documents, information or testimony sought are described with particularity."

19 C.F.R. § 103.23(a)(3)(ii)–(iv).

And, under Section 103.23(b), the CBP *Touhy* regulations enumerate factors that prohibit the Chief Counsel from authorizing CBP testimony, which include where such disclosure "would unduly interfere with the orderly conduct of CBP business" or where "CBP has no interest . . . regarding the matter in which disclosure is sought[.]" 19 C.F.R. § 103.23(b)(8)–(9).

B.  APA Review Standards

Judicial review of an agency's denial of a *Touhy* request is governed by the Administrative Procedure Act (APA). *CF Indus.*, 692 F. App'x at 181 & n.3. Under APA review,

a *Touhy* denial may be set aside "only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"—a "narrow" standard under which the Court assesses whether the agency reached a "decision . . . based on a consideration of the relevant factors[.]" *Shrimpers & Fishermen of the RGV v. United States Army Corps of Eng'rs*, 56 F.4th 992, 996 (5th Cir. 2023) (internal quotation marks omitted).

"In accordance with this 'narrow standard of review,' a court 'is not to substitute its judgment for that of the agency' but rather determine 'whether there has been a clear error of judgment.'" *Gulluni v. Levy*, 85 F.4th 76, 82 (1st Cir. 2023) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)); *see also CF Indus.*, 692 F. App'x at 181. So long as the agency's path to its decision "may reasonably be discerned[,]" an agency's denial of a *Touhy* request should be upheld. *Shrimpers*, 56 F.4th at 996; *see also St. Vincent Med. Grp.*, 71 F.4th at 1076 ("Put another way: unless the [agency] unreasonably applies its *Touhy* regulations, a federal court is powerless to compel its participation in state court discovery."). And throughout the Court's analysis, the agency's interpretation of its own regulations "is controlling unless it is 'plainly erroneous or inconsistent with the regulation.'" *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 851 (5th Cir. 2013) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

## ARGUMENT

Plaintiff cannot show that CBP's denial of her *Touhy* request amounted to an unreasonable application of the agency's *Touhy* regulations. Here, like in *CF Industries*, "[t]he record reflects that [CBP] recognized and considered the applicable *Touhy* regulations in making its decision"—that it "disclosed a significant amount of investigative material and, in denying certain requests, . . . articulated its reasons for doing so." *CF Indus.*, 692 F. App'x at 182. CBP's denial of Plaintiff's *Touhy* request should be affirmed.

**A. CBP Training**

The *Touhy* regulations instruct the Chief Counsel to consider, among other factors, whether "a showing of substantial need has been made" and whether the information sought is "[u]navailable from other sources[.]" 19 C.F.R. § 103.23(a)(3)(ii)–(iii). Applying these factors, CBP reasonably found that Plaintiff had not made a showing of substantial need for live testimony from the BPAs on CBP incident command training. As CBP's response stated, since Arredondo's liability under Texas Penal Code Section 22.041 will depend upon "his own acts or omissions[,]" it remains unclear how information about federal training would be relevant—much less substantially needed—for the prosecution to move forward.

Plaintiff has argued that federal officers' training might bear on Arredondo's "degree of criminal responsibility[,]" theorizing that Arredondo might be less culpable for the delayed response if federal officers would have disregarded a "stand down" order from him because of their training. *See* AR00010. The possibility of such testimony does not show a "substantial need[.]" At most, this speculation points to possible information of marginal relevance. Even if relevant, it does not follow that a substantial need exists for live testimony from Border Patrol Agents, since information about CBP's training is available in other formats.

In particular, the subsequent publication of the CBP OPR Report forecloses any showing of substantial need for live testimony on training. The CBP OPR Report discusses, in considerable detail, "the actions of CBP personnel in accordance with applicable laws, policies, and agency training." *See* AR00079. This discussion includes information about CBP's training on federal agents' authority relative to state and local law enforcement incident commanders, the perception of command and control by the specific BPAs who responded to Robb Elementary School, and how that perception affected CBP's actions on the scene. The CBP OPR Report

specifically addresses the actions of the Border Patrol Agents who breached the classroom door and neutralized the shooter—two of whom are the same agents from whom Plaintiff now seeks testimony.

Plaintiff suggests that the CBP OPR Report and other sources of this information would draw hearsay objections in state court. But CBP's *Touhy* regulations do not require the agency to provide responses in a format admissible in state court. *See, e.g.*, *St. Vincent Med. Grp., Inc. v. United States Dep't of Just.*, No. 1:22-MC-00011-JPH-MG, 2022 WL 16715468, at *6 (S.D. Ind. Oct. 27, 2022) (finding no showing of substantial need for live testimony where the requestor's "purported need for testimony . . . is to avoid or minimize hearsay objections that may be raised to bar admission of that other evidence"), *aff'd,* 71 F.4th 1073 (7th Cir. 2023).

In arguing otherwise, Plaintiff relies principally on *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp.2d 1268, 1279 (D. Colorado 2011). ECF No. 1 at 6, 12, 25, 30 (citing *Ceroni*). But *Ceroni* does not support her position, for several reasons. First, the request at issue in *Ceroni* was primarily a request for physical entry into and inspection of a federally operated facility—a form of disclosure for which other sources of information can less adequately substitute. *Ceroni*, 793 F. Supp. 2d at 1279 (reasoning that "it is possible to inspect the site of an accident only by an inspection"). Second, unlike this case, *Ceroni* dealt with a federal court subpoena issued pursuant to Federal Rule of Civil Procedure 45, not a state court subpoena. *See, e.g.*, *Ceroni*, 793 F. Supp. 2d at 1275 (reasoning that "[w]here . . . a federal court is asked to enforce its own subpoena issued in connection with a federal proceeding, no such requirement [for APA review] exists."). For this reason, the *Ceroni* court—though nominally still applying an arbitrary and capricious standard—found that APA review did not apply. *Id.* (discussing *In re Criminal Subpoena Duces Tecum*, 162 F.3d 1172, *1 (10th Cir.1998)

(unpublished)). Finally, *Ceroni*—out of circuit authority that is not binding on this court—has been characterized by multiple other courts as an "outlier" for its reasoning on *Touhy*. *Armstrong v. Arcanum Grp., Inc.*, 250 F. Supp. 3d 802, 806 (D. Colo. 2017) (*Ceroni* "is an outlier compared to the rest of the cases in this district"); *Aero Tech, Inc. v. Great Am. Ins. Co.*, No. CV 22-476 WJ/GJF, 2023 WL 5002618, at *5, *6 (D.N.M. Aug. 3, 2023) (describing *Ceroni* as "[o]ne 'outlier' case from the District of Colorado" that has been "roundly criticized"). Contrary to Plaintiff's invocation of *Ceroni*, "numerous other courts, including the Fifth Circuit, have applied *Touhy* regulations to restrict or deny the testimony of agency employees in criminal cases." *State v. Lueck*, No. 416CV00130ALMCAN, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016) (collecting cases). And contrary to *Ceroni*, the possibility that alternative sources of information might draw hearsay objections in state court does not compel a *Touhy* disclosure. *St. Vincent Med. Grp.*, 2022 WL 16715468, at *6.

And, to the extent that Plaintiff seeks this information because it might be mitigating, she has not addressed why the CBP OPR Report or other sources would not fall within a hearsay exception such as Texas Rule of Evidence 803(8). *See e.g.*, *Fort Bend Cent. Appraisal Dist. v. Am. Furniture Warehouse Co.*, 630 S.W.3d 530, 537 (Tex. App.—Hous. [1st Dist.] 2021).

### B. CBP Equipment

Plaintiff's challenge to CBP's explanation for its denial of her request for information about CBP equipment fails for similar reasons. First, Plaintiff has not shown a substantial need for this information. *Cf.* 19 C.F.R. § 103.23(a)(3)(ii). Plaintiff offers a theory of necessity and relevancy broadly similar to that offered for her request for testimony on CBP training: That it is her office's "understanding that an incident commander has an obligation to provide the equipment to accomplish the mission[,]" and that an inventory of CBP's equipment would

therefore bear on "how much of the incident commander's lack of providing equipment contributed to the delay." *See* AR00012.

As with information about federal officer training, CBP's Chief Counsel reasonably found that speculation about the possible mitigation of Arredondo's culpability based on CBP's equipment falls short of showing a "substantial need" under 19 C.F.R. § 103.23(a)(3)(ii). The possible mitigating effects of CBP's arrival with its own equipment has little or no bearing on whether Arredondo's own actions and omissions amounted to a state law criminal offense. And even if Plaintiff could show a "substantial need" for an inventory of CBP's equipment, this would not point to a need for live testimony from the three BPAs. Rather, CBP's Chief Counsel reasonably found that the information about CBP's equipment is better available from other sources. *See* 19 C.F.R. § 103.23(a)(3)(iii). Most relevant here, the topic of CBP's on-scene equipment has already been explored in detail in CBP's OPR Report. Specifically, as the agency's response noted, the Report "makes it clear that CBP employees did not respond to Robb Elementary School with the equipment necessary to breach the classroom door nor did any of them possess a key to the school and/or any classroom."[3] *See* AR00017, 96–97, 103.

---

[3] The request notes various other equipment-related facts drawn from other evidence. For instance, the request notes that gas canisters and masks arrived on the scene from an unidentified source but were not used for unknown reasons that "may be attributable to Arredondo or someone else." Affidavit at 6–7. The request states that state and local officers, intending to bring "flash bangs" to the scene, mistakenly brought explosives that fire rubber projectiles—but that "[i]t is unclear . . . if CBP agents had flash bangs readily available." *Id.* at 7. And the request notes that it is unclear whether and to what extent the lack of a classroom key contributed to the 25-minute delay between BORTAC's arrival on the scene and entry into the classroom. *Id.* at 7. This summary points to other sources of information about equipment on the scene, further demonstrating the lack of a substantial need for additional testimony from the three Border Patrol Agents. In any event, where the existing evidence is in conflict, Plaintiff does not explain how additional testimony from the Border Patrol Agents would resolve, rather than add to, the conflict.

### C. Arredondo's Communications with Border Patrol Agents

The CBP Chief Counsel reasonably found that, as with Plaintiff's request for testimony about CBP training and equipment, she did not show a substantial need for the BPAs' testimony about Arredondo's communications with other officers on the scene and did not show that that information was not available from other sources. 19 C.F.R. § 103.23(a)(3)(ii)–(iii). Indeed, the request itself describes various other sources of information about Arredondo's on-scene communications, citing "considerable conflict in testimony as to how effective radios were" and information that "Arredondo . . . communicated by cell phone" and that "[o]ther officers gathered information from Arredondo and broadcast it to others." AR00013.[4] As with her request related to training and equipment, Plaintiff's theory of relevance is that the BPAs' testimony on what communications they received from Arredondo would "assist a fact finder in deciding how much delay was due to Arredondo." Affidavit at 8. But as stated above, the possibility that additional testimony might assist the factfinder does not amount to a showing of substantial need. As with the other topics, the CBP Chief Counsel reasonably found the request for the three BPAs' testimony on Arredondo's on-scene communications fails to show either a substantial need or unavailability from other sources. *See* AR00017 (citing 19 C.F.R. § 103.23(a)(3)(ii)–(iii)). As the CBP Chief Counsel noted, the CBP OPR Report documents that dozens of state and local law enforcement officers were present throughout both the south end of the hallway—where Arredondo was located—and the north end of the hallway, where many of the CBP personnel on the scene were located. Those state and local officers would be at least equally (and

---

[4] In her *Touhy* Request and in her Complaint, Plaintiff asserts that her office "exhausted our attempts to obtain the information from the state and local law enforcement officers who were present at the scene[.]" AR00014; ECF No. 1 at ¶ 40. This conclusory claim, regardless of whether presented in an affidavit, cannot plausibly show that information essential to its prosecution is available from no other source, particularly where the Affidavit itself describes the information already obtained from other sources.

likely more) able to testify than the BPAs about Arredondo's communications with other officers on the scene. AR00018. And as with the topics of CBP training and equipment, the question of Arredondo's on-scene communications, and specifically the question of whether any of those communications reached the BORTAC team that breached the classroom, is addressed in the CBP OPR Report. *See* AR00053–54.

### D. Request for Exculpatory, Impeaching, or Mitigating Evidence

Finally, the Administrative Record shows that CBP Chief Counsel reasonably found that Plaintiff's request for "any information, admissible as evidence or not, that would tend to negate the guilt of Pedro Arredondo, impeach the testimony of any witness for the State of Texas, or tend to reduce the punishment for the charges against Arredondo[,]"[5] was not described with particularity, 19 C.F.R. § 103.23(a)(3)(iv). And, since CBP has no involvement in Arredondo's state prosecution, the CBP Chief Counsel reasonably found that CBP lacks any official interest or information related to the state prosecutors' disclosure obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) and *Giglio v. United States,* 405 U.S. 150 (1972). AR00018. For those reasons, the request would significantly interfere with the orderly conduct of CBP business—findings that preclude disclosure under 19 C.F.R. § 103.23(b)(8)–(9).

Where the United States is not a party and "[a federal agency] ha[s] no role in [a] state court prosecution[,]" the state prosecutor's constitutional disclosure obligation "does not give

---

[5] In Plaintiff's request, this category of information was framed as a question directed to the three Border Patrol Agents from whom she sought testimony. *See* AR00005, 14. However, in her Complaint, Plaintiff now appears to reframe her request as one not limited to the knowledge of the three Border Patrol Agents, but as a request to have CBP "search for information held by CBP that could exonerate or mitigate Arredondo's guilt, or impeach other inculpatory witnesses." ECF no. 1 at ¶ 52. The Court should evaluate the reasonableness of CBP's decision based on the request that was presented to it in Plaintiff's October 2024 request. But even as reframed, Plaintiff's request does not point to any obligation of CBP to search for *Brady* or *Giglio* material. *Gulluni*, 85 F.4th at 81.

rise to a constitutional duty by [the federal agency]" under *Brady* or *Giglio*, or similar state law disclosure requirements. *Gulluni v. Levy*, 85 F.4th 76, 81 (1st Cir. 2023) ("Surely, DOJ's disclosure to [state prosecutor] would ease compliance with his constitutional obligations, but [state prosecutor's] ability to comply with said obligations does not turn on whether DOJ discloses the requested information."); *State v. Lueck*, No. 416CV00130ALMCAN, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016) ("numerous other courts, including the Fifth Circuit, have applied *Touhy* regulations to restrict or deny the testimony of agency employees in criminal cases."); *People v. Adams*, 86 Misc. 3d 472, 476 (N.Y. Sup. Ct. 2025) ("As in the Brady context, [state prosecutors] cannot be charged with failure to disclose materials they themselves could not obtain from law enforcement officers answerable to another sovereign." (quoting *People v. Santorelli*, 741 N.E.2d 493 (Ct. App. N.Y. 2000)).

### E.  Plaintiffs' Arguments Invoke Incorrect Standards

At points, the Complaint crosses from arguments about specific categories of potential testimony into more nebulous lines of argument. For instance, the Complaint argues that since the BPAs were involved in the underlying events, they must have *some* unique information and must therefore have some obligation to testify under CBP's *Touhy* regulations. ECF No. 1 at 2–3. This line of argument—that CBP should be required to produce whatever unique information it must have—cannot be reconciled with the applicable *Touhy* regulations, which require a requestor to "describe[] with particularity" the documents, information, or testimony they seek. 19 C.F.R. § 19.103.22(a)(3)(iv).

In a similar vein, Plaintiff argues that testimony from the three BPAs must be provided because it is "essential for both the prosecution and defense of Arredondo." ECF No. 1 at 5. On the prosecution side, she argues that the BPAs' testimony is needed to "clarify how Arredondo's

actions, omissions, and order as incident commander influenced their actions." ECF No. 1 at 6. On the defense side, she argues that any exculpatory or mitigating testimony the agents might give would implicate Arredondo's rights under the Sixth and Fourteenth Amendments.[6] ECF No. 1 at 6–7. But as discussed above, the federal government is neither prosecuting Arredondo nor a party to Plaintiff's prosecution of Arredondo. CBP's *Touhy* regulations prohibit disclosure where "CBP has no interest . . . regarding the matter in which disclosure is sought[,]" 19 C.F.R. § 103.23(b)(9), and a state court prosecutor's *Brady* and *Giglio* obligations do not entitle it to a *Touhy* disclosure. *Gulluni*, 85 F.4th at 81.

    The standard governing the agency's release of information is not whether its officers have "unique information" to provide. Rather, "[a]t bottom, whether to comply with a state court subpoena 'is essentially a policy decision about the best use of the agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th at 1076 (quoting *COMSAT*, 190 F.3d at 278). The factors that govern that policy decision include not only whether the federal agents' testimony could provide information that is "[u]navailable from other sources"; but also whether that unique information is "[g]enuinely necessary to the proceeding"; whether "a showing of substantial need has been made"; and whether the testimony sought is "described with particularity." 19 C.F.R. § 103.23(a)(3). And disclosure flatly "will not be made" where CBP's Chief Counsel reasonably determines that "CBP has no interest . . . regarding the matter in which disclosure is sought" or that such disclosure "would unduly interfere with the orderly conduct of CBP business[.]" 19 C.F.R. § 103.23(b)(8)–(9). Under CBP's *Touhy* regulations, disclosure is not required in every case where CBP's officers are involved in events that later lead to a state court prosecution.

---

[6] Plaintiff also notes in her Complaint that, seeking "to assuage any concerns about potential criminal liability," she offered to seek a court order granting the Border Patrol Agents "use" immunity for their testimony. No such concerns were cited by CBP as a basis for declining to authorize the requested testimony.

### F. Even if the Court Finds an APA Violation, the Proper Remedy is a Remand for Further Consideration

Finally, even if the Court should determine that CBP's decision in this matter did violate the standards set out in the APA, the Court may not, as Plaintiff requests, issue an order compelling CBP to provide the testimony. Rather, if the Court were to set aside CBP's *Touhy* decision, the exclusive relief available is remand of the matter to CBP for further administrative review consistent with APA standards and the Court's decision. *BizCapital Business & Indus. Development Corp. v. Comptroller of the Currency of the United States*, 467 F.3d 871 (5th Cir. 2006) (citing *FEC v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case - even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason.")); *see also Murphy v. United States Dep't of Veterans Affs.*, No. 24-CV-03127-NYW, 2025 WL 1688117, at *6 (D. Colo. June 16, 2025); *but cf.* ECF No. 1 at ¶ 60 (requesting order "requiring Agents A, B, and C to testify in the state court proceedings").

\* \* \*

When an agency is not a party to an action, "[a]t bottom, whether to comply with a state court subpoena 'is essentially a policy decision about the best use of the agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th at 1076 (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)).

The Court's role under the APA is to review this decision under the arbitrary, capricious, abuse of discretion, or not in accordance law standard—a "narrow" standard under which the Court "must be mindful 'not to substitute [its] judgment for that of the agency." *10 Ring Precision, Inc.*, 722 F.3d at 723. Here, the agency considered each component of Plaintiff's

request, explained why multiple factors of the applicable *Touhy* regulations showed that disclosure was not warranted, and provided Plaintiff and the public with other forms of information, particularly the CBP OPR Report. In so doing, CBP considered the law, made a reasoned decision, and explained itself. The Court should enter a summary judgment affirming CBP's denial of Plaintiff's *Touhy* request.

If, alternatively, the Court finds that CBP's denial of Plaintiff's request is arbitrary and capricious, the Court should remand Plaintiff's request for further consideration by CBP's Chief Counsel.

## CONCLUSION

The Court should enter a summary judgment for Defendant.

Dated: December 8, 2025

Respectfully submitted,

**Justin R. Simmons**
United States Attorney

By:   /s/ *Robert D. Green*
Robert D. Green
Texas Bar No. 24087626
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7362 (phone)
(210) 384-7312 (fax)
robert.green3@usdoj.gov

*Attorneys for Defendant*