IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **CHRISTINA MITCHELL, IN HER OFFICIAL CAPACITY AS THE DISTRICT ATTORNEY FOR THE 38ᵀᴴ JUDICIAL DISTRICT OF TEXAS,** *Plaintiff,* <br><br> V. <br><br> **UNITED STATES CUSTOMS AND BORDER PROTECTION,** *Defendant.* | § § § § § § § § § § § § § | **CIVIL ACTION NO. 2:25-cv-00033-AM** |

**PLAINTIFF CHRISTINA MITCHELL'S RESPONSE TO
UNITED STATES CUSTOMS AND BORDER PROTECTION'S
MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF CHRISTINA MITCHELL submits the following response to the motion for summary judgment filed by United States Customs and Border Protection ("CBP").

**I.    INTRODUCTION**

Former Uvalde Consolidated Independent School District Police Department Chief Pedro "Pete" Arredondo has been charged by indictment with the felony offense of endangering ten children. The indictment alleges various acts and omissions that delayed the response by law enforcement officers to an active shooter who was hunting and shooting children at Robb Elementary School on May 24, 2022.

In response to this active shooter incident, over three hundred law enforcement officers descended on Robb Elementary School that day to assist Chief Arredondo. 188 of the responding law enforcement officers were employed by the United States Border Patrol.

1

What they found as they arrived was disorganization and chaos. Valuable seconds and minutes ticked by as these officers waited for a tactical plan, waited for useful equipment, and waited for a key or breaching tools to open the door to Room 111 where the active shooter was located amidst victims needing assistance and protection.

The U.S. Border Patrol acted. Assuming tactical control of the officers in the school hallway, a senior BORTAC agent assessed the situation, formulated a plan, and then, with two other Border Patrol agents and a sheriff's deputy, entered the classroom, and ended the incident.

Now, a lawyer in Washington, D.C., the Chief Counsel for United States Customs and Border Protection, is refusing to make these agents available to testify at Arredondo's state criminal trial.

In his written declination letter, the Chief Counsel has decided that the state prosecutors really do not need the testimony of these agents and has concluded that the reasons expressed under oath by Assistant District Attorney Bill Turner, an experienced Texas prosecutor, for needing the testimony of these agents are "unclear" to him. He has assured Turner, however, that adequate substitutes exist for the testimony of these agents: to-wit, the non-Border Patrol officers at the scene of the incident, and the inadmissible hearsay report of the CBP Office of Professional Responsibility.

To sum up: Pete Arredondo is accused by state law indictment of acts and omissions that delayed the response by law enforcement officer to an active shooter hunting and shooting children at Robb Elementary School. A prosecutor has stated under oath that in his professional judgment the testimony of three Border Patrol agents is necessary to fully develop his case against Arredondo and he explained why he reached that judgment.

In response to this, the CBP has second-guessed the Texas prosecutor's judgment and, despite the Texas prosecutor's best efforts to comply with federal regulations, to narrow the scope of the District Attorney's request for testimony, and to accommodate the agents' schedules, has concluded in conclusory and superficial terms that it will not let the requested Border Patrol agents provide their unique perspective on topics that the Texas prosecutor has deemed necessary to prove his case beyond a reasonable doubt.

Fortunately, the Administrative Procedure Act gives this Court the power to remedy abuses of discretion and arbitrary decision-making by federal agencies. For the reasons expressed below, this Court should deny U.S. Customs and Border Protection's motion for summary judgment and instead grant District Attorney Christina Mitchell's motion for summary judgment.

## II.    *TOUHY* REGULATIONS – NO ONE IS ABOVE THE LAW

As noted in District Attorney Mitchell's original complaint, federal agencies and their employees are accorded sovereign immunity from state court process, including subpoenas and writs of attachment. She does not contest this well-settled principle.

This does not mean that federal agencies and their employees can arbitrarily decline to participate in state court proceedings, however. An agency's decision whether to voluntarily waive sovereign immunity and agree to participate in state court proceedings must be made in accordance with that agency's regulations, which dictate the manner in which such decisions are made. These regulations are commonly referred to as "*Touhy* regulations" in acknowledgement of a Supreme Court decision that recognized the authority of a federal agency to enact and follow regulations "centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged." See *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

In the aftermath of *Touhy*, federal agencies have promulgated regulations that are designed to address each agency's unique needs and considerations. These regulations act as a check on an agency's discretion, requiring the agency to give full consideration of a requestor's need for cooperation from the agency and to then balance that need against the interests of the agency and its employees to minimize unnecessary interference with the agency's functions. This process ensures transparency and accountability for the agency's exercise of discretion and forbids arbitrary and capricious decision-making.

CBP has its own *Touhy* regulations governing its exercise of discretion in considering state prosecutors' requests for testimony from CBP employees. *See* 19 C.F.R., Part 103. Under these regulations, the Chief Counsel of CBP decides whether to authorize the disclosure of the requested information and should consider, *inter alia,* whether the information requested is relevant and material to the action pending, genuinely necessary to the proceeding, unavailable from other sources, and reasonable in its scope. 19 C.F.R. § 103.23(a)(3).

Adherence to these regulations is not optional. An agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

## III.   ENFORCING AGENCY ADHERENCE TO *TOUHY* REGULATIONS

The proper method to seek judicial review of a federal agency's final *Touhy* decision pursuant to its regulations is through a direct action brought under the Administrative Procedure Act (APA). *See, e.g., Hasie v. Office of Comptroller of Currency*, 633 F.3d 361, 365 (5th Cir. 2011); *CF Industries, Inc. v. Dep't of Justice BATF*, 692 F. App'x 177, 182 n.3 (5th Cir. 2017).

Under the APA, a federal agency's denial of a *Touhy* request will be overturned only if the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

In cases challenging an agency's action, summary judgment is the mechanism for deciding whether the action is supported by the administrative record and otherwise consistent with the APA standard of review. *Yogi Metals Group, Inc. v. Garland*, 567 F. Supp.3d 793, 798 (S.D. Tex. 2021). Because the district court serves such a limited role, the Rule 56(c) standard does not apply. *Id.* Instead, the district court serves functionally as an appellate tribunal and must determine whether the agency acted within the law and based on the evidence in the administrative record. *National Association for Gun Rights, Inc. v. Garland*, 741 F. Supp.3d 568, 597 (N.D. Tex. 2024).

An agency's decision is arbitrary and capricious if the agency offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *See, e.g., State Farm,* 463 U.S. at 43 (1983).

An abuse of discretion may occur when the decision is based on an erroneous interpretation of the law or on factual findings not supported by substantial evidence or when it represents an unreasonable judgment in weighing relevant factors. *See, e.g., Burandt v. Dudas*, 528 F.3d 1329, 1332 (Fed. Cir. 2008).

The "arbitrary and capricious" standard is not an impossible standard in the *Touhy* context. In several cases, federal courts have found agencies to have made *Touhy* determinations that were arbitrary and capricious. *See, e.g., Schroeder v. U.S. Department of Veterans Affairs*, 673 F. Supp.3d 1204 (D. Kansas 2023); *In re Subpoena to National Science Foundation, Office of Inspector General*, 2018 WL 5017612 (E.D. Virginia, Oct. 16, 2018) (construing Administrative

5

Procedure Act's "arbitrary and capricious" standard to find that agency misapplied *Touhy* regulations and to require disclosure of interview transcripts because transcripts were "crucial for the trial court to adjudicated fairly the rights of the parties in the underlying action"); *Rhoads v. U.S. Department of Veterans Affairs,* 242 F.Supp. 985 (E.D. Cal. 2017); *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp.2d 1268 (D. Colorado 2011).

One court fairly summarized the necessity for an agency to have a "good reason" to withhold evidence in a *Touhy* analysis:

> The Supreme Court has reminded us that,
>
>> "'For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, *we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.*'"
>
> While the decision in *Touhy* recognized the authority of the heads of government agencies to enact regulations to provide an orderly process for handling requests for information and evidence addressed to them, neither *Touhy* nor the Federal Housekeeping Act stands for the proposition that the government is broadly exempt from providing evidence.  Indeed, the Federal Housekeeping Act – the current legal authority under which *Touhy* regulations are promulgated – explicitly rejects the notion that the government is exempt from providing evidence, saying "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. *There must be a good reason for an agency to withhold its evidence, and absent such a good reason, doing so is arbitrary, capricious, and an abuse of discretion.* Courts certainly are required to give great deference to the determinations made by agencies concerning reasons for withholding evidence, but *those reasons must make sense within the general context of the broad obligation to comply with the public's entitlement to "every man's evidence."*

*Brown v. U.S. Department of Veterans Affairs*, Case No. 2:17-cv-1181-TMP, 2017 WL 3620253 (N.D. Ala., Aug. 23, 2017) (citations omitted and emphasis added).

IV.     **ANALYZING CBP'S DENIAL OF MITCHELL'S *TOUHY* REQUEST**

CBP's declination of District Attorney Mitchell's October 24, 2024, *Touhy* request was arbitrary and capricious and an abuse of discretion that should be vacated.

   A.     **Summary of District Attorney Mitchell's *Touhy* Request**

On October 24, 2024, on behalf of District Attorney Mitchell, Assistant District Attorney Bill Turner sent CBP Chief Counsel Frederick Smith a document titled "19 CFR § 103.21-26 Third Demand for Testimony from Customs and Border Protection Employees," seeking cooperation and testimony from U.S. Border Patrol Agents A, B, and C. In his letter and accompanying affidavit, Turner responded in detail to the concerns expressed by Chief Counsel Smith in two previous *Touhy* declinations and clarified the need for cooperation and testimony from the three witnesses regarding: (a) whether they had been trained on active shooter scenarios to exercise their own judgment independent of any state scene supervisor; (b) the extent to which the responding officers were provisioned with equipment necessary to respond to the active shooter; (c) the manner and content of Arredondo's communications with them during the incident; and (d) their knowledge of any evidence that would be exculpatory, impeaching or mitigating in Arredondo's favor.

   B.     **Mandatory Denial Factors Not Applicable**

As a threshold matter, 19 C.F.R. § 103.23(b) details eleven circumstances in which the Chief Counsel may not authorize disclosure. A careful review of CBP's December 14, 2024, denial letter (and the previous denial letters incorporated into the December 14 letter) shows that CBP cited only three of eleven mandatory reasons for denying District Attorney Mitchell's request for testimony:

- **19 C.F.R. § 103.23(b)(5).** Disclosure would reveal investigatory records compiled for law enforcement purposes, interfere with enforcement proceedings, or disclose investigative techniques and procedures. AR 22.

- **19 C.F.R. § 103.23(b)(8).** Disclosure would unduly interfere with the orderly conduct of CBP business. AR 18.

- **19 C.F.R. § 103.23(b)(9).** CBP has no interest, records or other official information regarding the matter in which disclosure is sought. AR 18.

None of these reasons support CBP's summary denial of District Attorney Mitchell's request.

***Classified or Confidential Information Being Sought.*** In his May 21, 2024, declination of District Attorney Mitchell's second *Touhy* request (incorporated by reference into his December 16, 2024, declination of Mitchell's October 24, 2024, *Touhy* request), Chief Counsel Smith cited 19 C.F.R. § 103.23(b)(5) stating, "the request may also seek confidential law enforcement techniques and procedures which are not appropriate for disclosure," but providing no additional explanation.

In the sworn affidavit accompanying District Attorney Mitchell's October 24, 2024, *Touhy* request, however, Turner clarified that he was not seeking confidential information and pointed out that "the specific way that the BORTAC team entered the room and carried out its mission has been thoroughly discussed in statements by your agents and other officers" and had been captured on video. AR 11. Accordingly, this factor does not apply here.

***Interference with Orderly Conduct of CBP Business; Interest in the Matter.*** In his December 16, 2024, declination of District Attorney Mitchell's October 24, 2024, *Touhy* request, Chief Counsel Smith cited 19 C.F.R. § 103.23(b) and stated in reference to her request to ask the Border Patrol witnesses about their knowledge of exculpatory, impeaching or mitigating evidence, CBP was not a party to the state court litigation and had no official interest or information regarding this matter and "efforts toward complying with this request would significantly interfere with the orderly conduct of CBP's business." AR 18.[1]

---

[1] Notably, CBP did not cite either of these factors with respect to District Attorney Mitchell's request for the Border Patrol agents' testimony on the other issues raised in her request. Nor can it. District Attorney Mitchell has made clear that her office will take measures to "minimize the time required for this process." AR 6. Moreover, testifying in court on matters arising from official business does not unduly interfere with CBP's business – to the contrary, testifying in court is very much a necessary function of CBP's regular business.

8

It is impossible to know from this conclusory statement exactly to what degree this particular request for such information would actually unduly interfere with CBP business. It would likely be minimal, given that CBP presumably complies with this constitutional imperative in criminal prosecutions arising out of its own criminal investigations and must already have the infrastructure to comply. As such, this statement is arbitrary and capricious because it is not supported by substantial evidence.

It also bears noting that District Attorney Mitchell's *Touhy* request did *not* seek CBP's institutional knowledge of any exculpatory, impeaching or mitigating evidence. It only raised this issue in the context of a question District Attorney Mitchell would ask each of the testifying Border Patrol agents. AR 14. In this context, if they were individually and personally unaware of any such evidence, that would end the inquiry. This is hardly an undue interference with the orderly conduct of CBP's business.

Also, CBP's interpretation of 19 C.F.R. § 103.23(b)(9) is extraordinarily expansive, essentially requiring the CBP Chief Counsel to deny *Touhy* requests for any matter in which CBP is not a party. Subsection (b)(9) does not reference party status at all: it forecloses disclosures in which CBP has no "interest, records, or other official information" regarding the matter. CBP *does* have records and official information regarding the mass shooting at Robb Elementary School.

And it is remarkable to say that CBP has no interest in vindicating the constitutional rights of an accused, particularly where the testimony sought is exclusive to CBP. *Cf. Gullini v. Levy*, 85 F.4th 76, 81 (1st Cir. 2023) (cited by CBP, holding that constitutional duty to disclose did not require "requesting those materials from a party which these did not originate from," namely, asking the Department of Justice to produce records from the Springfield Police Department). In contrast to *Gullini*, District Attorney Mitchell seeks information held exclusively by the Border Patrol agents

who were *at the scene of the shooting* – no other source can answer the particular question posed in Mitchell's *Touhy* request. The other cases cited by CBP have little relevancy: the fact that District Attorney Mitchell cannot be held responsible for a federal agency withholding information beneficial to a defendant does not mean that she cannot ask for it and it does not mean that CBP can arbitrarily withhold it.

The faulty reasoning of this assertion was best summed up in *Brown v. U.S. Department of Veterans Affairs*, Case No. 2:17-cv-1181-TMP, 2017 WL 3620253 (N.D. Ala., Aug. 23, 2017), in which a similar "lack of interest" claim made by the Veterans Administration was deemed arbitrary, capricious and an abuse of discretion:

> The fact that the VA has no direct or substantial interest in the private litigation between the plaintiff and the maker of Risperdal does not establish a reason for refusing to provide factual evidence relevant and material to that litigation. *The same can be said of all disinterested witnesses. A witness's disinterest in someone else's lawsuit does not absolve him of providing his evidence.* Also, because the evidence sought in this case is entirely factual, it cannot be perceived as the VA favoring one litigant or advocating that litigant's position, any more than the testimony of any neutral, disinterested witness. Moreover, making Dr. Khan available for a deposition on purely factual matters does not expend VA resources in a private matter anymore than the expense incurred by any disinterested witness. The resources of the VA are not being placed at the disposal of the private plaintiff, but only in compliance with a general duty to provide evidence.

*Id.* at *8 (emphasis added).

Accordingly, these mandatory citations have no support in the record and should be rejected as arbitrary and capricious and abuses of discretion.

    C.    **Discretionary Factors Do Not Support Denial**

Turning to the general consideration factors identified in 19 C.F.R. § 103.23(a), the CBP's denial of District Attorney Mitchell's October 24, 2024, *Touhy* request based on these factors was untethered to the evidence before it.

As a threshold matter, CBP's analysis includes boilerplate objections, devoid of any individualized factual analysis. For example, CBP states without explanation, "an inventory list of the equipment BORTAC or other CBP employees had or wished they had on May 24, 2022 at the time of their arrival to Robb Elementary School is irrelevant to your prosecution of Mr. Arredondo." AR 17. And CBP also states, without discussing and distinguishing Turner's sworn assertions, that "it is unclear how information concerning how CBP agents are trained in active shooter scenarios and their prospective responses to an incident commander's directives are relevant to the question of whether Mr. Arredondo violated Texas Penal Code Sec. 20.041 through his own acts or omissions." AR 17.

These conclusory statements do not constitute reasoned analysis and carry no weight. *See Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp.2d 1268, 1278 (D. Colorado 2011) (rejecting such conclusory analysis); *OhioHealth Corp. v. U.S. Dep't of Veteran Affs.,* No. 2:14-cv-292, 2014 WL 4660092, at *6 (S.D. Ohio, Sept. 17, 2014) (finding VA's denial of *Touhy* requests was arbitrary and capricious where the VA "offered no connections, just conclusions" for the basis of its denial).

Turning to the other conclusions drawn by CBP in its December 14, 2024, declination letter, none of these conclusions merit denial of District Attorney Mitchell's *Touhy* request.

***Clarity on relevance of CBP active shooter training.*** In his December 14, 2024, letter, Chief Counsel Smith stated that it was "unclear" to him why active shooter training was relevant to the Texas criminal prosecution against Arredondo.

This purported lack of clarity is belied by Turner's sworn affidavit, however, which specifically addressed the need for establishing whether the CBP's active shooter training required the CBP agents to act independently from the incident commander or whether they were required to

be deferential to the incident commander. The answer to that question is essential in establishing whether Arredondo was the primary cause of the delayed response to the gunman.

CBP also argues that the OPR Report specifically addresses the training and equipment issues and is a sufficient response to District Attorney Mitchell's *Touhy* request. *See* CBP Motion at 9-10 ("[T]he subsequent publication of the CBP OPR Report forecloses any showing of substantial need for live testimony on training.")

This is not true. Under Texas law, CBP's written reports and witness statements are no substitute for the testimony of these three witnesses. Such reports and witness statements would be inadmissible hearsay in a trial proceeding in Texas district court. *See* TEX. R. EVID. 802 (hearsay prohibition); 803(8)(A)(iii) (public record hearsay exception of "factual findings from a legally authorized investigation" only applicable "against the government in a criminal case").

*Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp.2d 1268 (D. Colorado 2011), provides guidance in this context. In *Ceroni*, a "dock leveler" manufacturer, which had been sued by a postal worker pursuing a product liability action, sought permission from the U.S. Postal Service to depose two USPS employees, one who witnessed the postal worker's accident and the other who completed an accident report form with facts favorable to the manufacturer's defense. *Id.* at 1270. The USPS refused permission, arguing, *inter alia*, that the requestor had "fail[ed] to specific why the information sought is unavailable by any other means." *Id.* at 1270, 1278.

Applying the APA's "arbitrary and capricious" standard of review, the *Ceroni* court held:

> The suggestion that the evidence is available through some other source is unsupported and obviously incorrect—it is possible to inspect the site of an accident only by an inspection, and *witness testimony can only be obtained at a deposition or trial through a subpoena*.

*Id.* at 1279 (emphasis added).

The same can be said about CBP's assertion that the evidence sought by District Attorney Mitchell is available from the OPR Report: the testimony of the three Border Patrol agents can only be obtained at a deposition or trial through a subpoena. There is no admissible substitute.

CBP attempts to distinguish *Ceroni* in its motion for summary judgment, but the authority it presents for this proposition is not persuasive.

*St. Vincent Medical Group, Inc. v. U.S. Dept. of Justice*, No. 1:22-mc-00011-JPH-MG, 2022 WL 16715468 (S.D. Ind., Oct. 27, 2022), cited in CBP's Motion at 10, simply holds that a requestor's hearsay concerns cannot overcome the Department of Justice's investigative privilege. By contrast, CBP is not claiming in the instant case that the substance of the OPR Report is privileged – it cannot because CBP has *publicly released the document*. But the OPR Report is no substitute for witness testimony at trial. The substance of this information *has* to be offered through witness testimony or it cannot be admitted at all.

And while *Armstrong v. Arcanum Group, Inc.*, 250 F.Supp.3d 802 (D. Colo. 2017), and *Aero Tech, Inc. v. Great American Insurance Company,* No. CV 22-476 WJ/GJF, 2023 WL 5002618 (D. N.M., Aug. 3, 2023), cited in CBP's motion at 11, both characterized *Ceroni* as an "outlier" case, those opinions were *not* saying that *Ceroni* was an outlier on its conclusion that "witness testimony can only be obtained at a deposition or trial through a subpoena." Instead, the outlier assertion was solely in reference to a conflict between *Ceroni* and *In re Gray*, 162 F.3d 1172 (10th Cir. 1998), on the question of whether a court can consider the merits of an agency's *Touhy* decision outside the context of an APA suit. *See Armstrong*, 250 F.Supp.3d at 806; *Aero Tech,* 2023 WL 5002618, at *5. In short, CBP's citations entirely misstate the context of these courts' characterization of *Ceroni* as an "outlier."

*Ceroni* remains a valuable resource on the *Touhy* question of whether there can be a substitute for witness testimony. That court analyzed the issue through the APA lens using its "arbitrary and

capricious" standard and found that the Postal Service's decision to withhold witness testimony was unjustified. *See Ceroni*, 793 F.Supp.2d at 1277-1278.

Finally, *State v. Lueck*, No. 416CV00130ALMCAN, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016), cited in CBP's motion at 11, is even less relevant. It is not an APA case, but instead a decision quashing a state court subpoena on sovereign immunity grounds. It does not address the hearsay issues at all but simply restates the uncontroversial proposition that a federal agency may, under appropriate circumstances, decline to cooperate in a state criminal case. *Id.* at *5.

The CBP's suggestion that a hearsay investigative report is a substitute for live witness testimony evidences a profound lack of understanding about criminal court proceedings in Texas and runs counter to the facts expressed in Turner's sworn affidavit. As such, it is arbitrary and capricious and an abuse of discretion and must be vacated.

***Need for equipment list.*** Chief Counsel Smith conclusorily observed that "an inventory list of the equipment BORTAC or other CBP employees had or wished they had on May 24, 2022 at the time of their arrival to Robb Elementary School is irrelevant to your prosecution of Mr. Arredondo."

This is untrue. As Turner stated in his sworn affidavit, establishing the *absence* of equipment from CBP forecloses any claim by Arredondo that CBP could have provided, but did not provide, equipment that could have expedited the law enforcement response to the gunman. Establishing what CBP believed it *needed* to enter the classroom suite is directly relevant to what Arredondo should have made available but did not.

Because CBP's conclusory analysis denying this request runs counter to the facts expressed in Turner's sworn affidavit, it is arbitrary and capricious and an abuse of discretion and must be vacated.

***Availability of equipment inventory from non-CBP sources.*** Chief Counsel Smith concluded that an inventory of the available equipment "may be obtained from the state and local law enforcement responders of which there were many. These individuals can testify about the equipment they possessed and whether anyone, including Mr. Arredondo, supplied them with the necessary equipment they lacked upon arrival."

This is untrue. Turner's sworn affidavit established that all non-CBP sources were exhausted prior to the District Attorney's third *Touhy* request. Moreover, non-CBP sources cannot speak to what CBP brought to the scene – only the CBP agents can address that issue.

Because CBP's conclusory analysis denying this request runs counter to the facts expressed in Turner's sworn affidavit, it is arbitrary and capricious and an abuse of discretion and must be vacated.

***Availability of Arredondo communications from non-CBP sources).*** In response to Turner's request for clarity from the CBP witnesses on how and what Arredondo communicated with them during the Robb Elementary incident, Chief Counsel Smith argued that the "CBP OPR report indicates that the school hallway was littered with state and local law enforcement officers. Your office can obtain this information from the state and/or local law enforcement officers present in the hallway and at the shooting scene."

Turner's sworn affidavit established, however, that all non-CBP sources were exhausted prior to the District Attorney's third *Touhy* request. Moreover, non-CBP sources cannot speak to what Arredondo may have said directly to the CBP agents, particularly with respect to the issues related to the entry into the classroom suite. Only the CBP agents can address that issue.

***Request for Information Favorable to the Defendant.*** In addition to CBP's assertions that this request is foreclosed by Subsections (b)(8) & (9), CBP also conclusorily stated that "the requested

15

information is not described precisely enough and therefore would be unduly burdensome to produce and speculative for a non-party federal agency to determine what is responsive." AR 18.

Turner's sworn affidavit stated the question as precisely as was possible at the time. Only the Border Patrol agents can describe with specificity what they know that could be exculpatory, impeaching or mitigating. These agents routinely answer this precise question in preparing for criminal trials in federal court, as they must under the due process clause of the United States Constitution. The interests of justice dictate that the state prosecutors know and communicate to the defendant any such favorable evidence.

Because CBP's conclusory analysis denying the District Attorney's request runs counter to the facts expressed in Turner's sworn affidavit and to the interests of justice, it is arbitrary and capricious and an abuse of discretion and must be vacated.

## V.   REMEDY

Should this Court find that CBP's refusal to permit the three Border Patrol agents to testify was arbitrary and capricious or an abuse of discretion, the usual remedy is remand of the *Touhy* request to the federal agency for additional investigation or explanation. *See, e.g., BizCapital Business & Industrial Dev. Corp. v. Comptroller of Currency of U.S.,* 467 F.3d 871, 873 (5th Cir. 2006). As the Supreme Court observed:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985).

This may, however, be the "rare circumstance" that merits resolution of this issue by this Court because of the exigencies associated with a state court criminal proceeding, including the defendant's

constitutional speedy trial rights. A remand to CBP would reset the calendar on District Attorney Mitchell's October 24, 2024, *Touhy* request, with the possibility of another refusal and another APA proceeding.

It has been over three-and-a-half years since the Robb Elementary incident, an incident in which the U.S. Border Patrol was deeply involved. As Judge Putnam wrote in *Brown*:

> Courts certainly are required to give great deference to the determinations made by agencies concerning reasons for withholding evidence, but those reasons must make sense within the general context of the broad obligation to comply with the public's entitlement to "every man's evidence."

*Brown,* 2017 WL 3620253, at *7.

Should this Court decline to apply the "rare circumstance" remedy of ordering CBP to produce the Border Patrol witnesses for the state criminal trial, District Attorney Mitchell requests that this Court issue an order similar to the order issued in *Schroeder v. U.S. Dept. of Veterans Affairs,* 673 F. Supp.3d 1204 (D. Kansas 2023), and set a short deadline for CBP's reconsideration of her *Touhy* request. *See id.* at 1224 (requiring federal agency to "undertake and conclude further consideration of the matter within 30 days of this Order").

## VI. CONCLUSION

The Court should deny summary judgment for U.S. Customs and Border Protection. Instead, it should grant summary judgment in District Attorney Mitchell's favor.

Respectfully submitted,

*/s/ Bill R. Turner*

State Bar No. 20335200
Assistant District Attorney
38th Judicial District Attorney's Office
524 E. Nopal Street
Uvalde, Texas 78801
(830) 278-2916 (telephone)
bill.turner@38thda.org

17

/s/ *Scott A. Durfee*

***Motion for Pro Hac Vice Admission Pending***
State Bar No. 20335200
Assistant District Attorney
38th Judicial District Attorney's Office
524 E. Nopal Street
Uvalde, Texas 78801
(830) 278-2916 (telephone)
scott.durfee@38thda.org

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December, 2025, a true and correct copy of the above foregoing pleading was served on Assistant United States Attorney Robert D. Green by email at robert.green3@usdoj.gov and by service through the PACER system.

/s/ *Scott A. Durfee*
**SCOTT A. DURFEE**
Assistant District Attorney